**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARCUS BOVARIE,

Plaintiff,

v.

ARNOLD SCHWARZENEGGER, Governor; PRIVATE HEALTH CARE COMPANY, "Company X"; MATTHEW CATES, Secretary of Corrections; JAMES E. TILTON, Former Secretary of Corrections; MICHAEL SMELOSKY, Warden, Centinela State Prison; V.M. ALMAGER, Former Warden, Centinela Prison; G.J. GIURBINO, Former Warden, Centinela Prison; N. BARRERAS, M.D., L. CALDERON, Health Care Manager, Centinela Prison; D. KHATRI, M.D., SUMMER AYMAR, D.O.; MANAIG, R.N.; J. ROBINSON, R.N.; CANDI COOK, Medical Appeals Analyst; TETTEH, M.D.; KO, M.D.; HODGE, N.P.; C. HAMMOND, Staff Services Manager I; NAVAMANI, M.D.; Does 1-20,

Defendants.

Civil No.08cv1661 LAB (NLS)

**REPORT AND RECOMMENDATION FOR ORDER:**

**(1) GRANTING COOK'S MOTION TO DISMISS [Doc. No. 25];**

**(2) GRANTING TETTEH'S MOTION TO DISMISS [Doc. No. 26];**

**(3) GRANTING IN PART AND DENYING IN PART SUMMER AYMAR'S MOTION TO DISMISS [Doc. No. 27];**

**(4) GRANTING C. HAMMOND'S MOTION TO DISMISS [Doc. No. 28];**

**(5) GRANTING KO'S MOTION TO DISMISS [Doc. No. 29];**

**(6) GRANTING IN PART AND DENYING IN PART BARRERAS, KHATRI, CALDERON AND MANAIG'S MOTION TO DISMISS [Doc. No. 30];**

**(7) GRANTING HODGE'S MOTION TO DISMISS [Doc. No. 31];**

**(8) GRANTING IN PART AND DENYING IN PART NAVAMANI'S MOTION TO DISMISS [Doc. No. 42];**

**(9) GRANTING ROBINSON'S MOTION TO DISMISS [Doc. No. 51].**

## INTRODUCTION

Marcus Bovarie (Plaintiff), a California prisoner proceeding pro se, and Wayne Wicken, also proceeding pro se, initially filed this 42 U.S.C. § 1983 civil rights action on September 10, 2008. [Doc. No. 1.] The court, after a sua sponte screening, dismissed the complaint without prejudice for failure to state a claim and dismissed plaintiff Wicken. [Doc. No. 3.] On December 8, 2008, Bovarie filed a first amended complaint (FAC) as a purported class action for violation of federal rights based on deliberate indifference to medical needs, and for state violations based on medical negligence, professional negligence and failure to provide immediate medical care. [Doc. No. 6.] On January 9, 2009, the court denied Bovarie's motion for class certification, dismissed defendants Schwarzenegger, Cates, Tilton, Smelosky, Almager and Giurbino for failure to state a claim against them, and ordered service on the remaining defendants. [Doc. No. 8.] All Defendants except Robinson and Navamani were served. [Doc. Nos. 11, 12.] The served Defendants filed motions to dismiss. [Doc. Nos. 25, 26, 27, 28, 29, 30, 31.]

On April 20, 2009, Bovarie filed a motion for the U.S. Marshal to complete service on defendant Navamani. [Doc. No. 33.] The court ordered the U.S. Marshal to execute that service. [Doc. No. 34.] On July 10, 2009, Bovarie filed a motion for the U.S. Marshal to complete service on defendant Robinson. [Doc. No. 38.] That same day he also filed a single opposition to the seven already-filed motions to dismiss. [Doc. No. 40.] The court granted Bovarie's motion to order the U.S. Marshal to execute service on defendant Robinson. [Doc. No. 41.] Then, defendant Navamani filed his motion to dismiss [Doc. No. 42] and Bovarie filed an opposition to that motion [Doc. No. 46.] Defendant Robinson filed his motion to dismiss on November 3, 2009. [Doc. No. 51.]

The court now addresses all the motions to dismiss in this consolidated order because the allegations against all Defendants involve the same or similar facts and circumstances. While Bovarie has not filed a specific opposition against Robinson's motion to dismiss, the court construes the other oppositions previously-filed to form the basis of his opposition to Robinson's motion to dismiss. The court has reviewed all nine motions, oppositions, replies and the complete record in this case. For the following reasons the court **RECOMMENDS** that the defendants Aymar, Barreras, Khatri, Calderon, Manaig and Navamani's motions to dismiss be **GRANTED in part and DENIED in part** and that the remaining motions be **GRANTED** in their entirety.

RELEVANT BACKGROUND

**The Original Illness.**[1]

Bovarie is incarcerated at Centinela State Prison (Centinela). On June 14, 2007 Bovarie and several other inmates became suddenly and extremely ill. FAC ¶ 35. Bovarie experienced severe fatigue, exhaustion, weakness, loss of equilibrium, confusion and kidney pain and was bedridden for 10 days. *Id.* Bovarie, in his mid to late thirties, had problems maintaining his equilibrium and cognitive skills for the first 30 days after the "original illness." *Id.* While he made a medical request the day he began experiencing symptoms, he did not receive medical attention until June 25, 2007. FAC ¶ 36.

Defendant Manaig, a registered nurse, saw Bovarie. FAC ¶ 37. He conducted a dipstick urinalysis. FAC ¶ 39. The results were negative. *Id.* Manaig told Bovarie that he would be called back to medical in approximately two weeks. *Id.* Manaig then ordered a mental health screening of Bovarie for excessive medical requests. FAC ¶ 41. On July 6, 2007, Bovarie was taken for a mental health screening with Dr. Haskett. FAC ¶¶ 40-41; Ex. H. Dr. Haskett referred Bovarie back to medical. FAC ¶ 41.

On August 1, 2007, Bovarie was taken to see Dr. Khatri. FAC ¶ 42. Bovarie was still suffering from the same symptoms he had experienced back on June 14, 2007. FAC ¶ 43. Dr. Khatri ordered a blood test. *Id.* Blood was drawn on August 17 and September 19, 2007. FAC ¶ 44. The blood test results showed that Bovarie had an elevated level of bilirubin but that test results were essentially within normal limits. FAC ¶ 44; Exs. I, J.

Bovarie saw Dr. Aymar on September 19, 2007. FAC ¶ 45. Bovarie told her that he was still suffering from the same symptoms as from June and that he believed he had kidney damage. FAC ¶ 46. Dr. Aymar did not explain the blood results to Bovarie, and told him that he was probably suffering from depression. FAC ¶¶ 46-48. On October 25, 2007 Bovarie saw Dr. Aymar again. FAC ¶ 50. Bovarie again complained of kidney pain, noted that he had pain in his liver and that any kind of

---

[1]The court takes these facts from the allegations in the FAC. In a Rule 12(b)(6) motion to dismiss, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). It will not, however, "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit [to the complaint]." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

physical exertion exacerbated the pain. *Id.* Dr. Aymar ordered a urinalysis. FAC ¶ 51.

On December 17, 2007 Bovarie attended another medical screening with nurse Manaig. FAC ¶ 52. Manaig referred him for a consult with a doctor. FAC ¶ 53. On January 25, 2008, Bovarie received his first medical exam since first complaining about his symptoms. FAC ¶ 54. After conducting a physical exam, Dr. Navamani ordered a CT scan for Bovarie. *Id.* Instead, Bovarie received an ultrasound of his abdominal area on July 7, 2008. FAC ¶ 57. Based on the ultrasound Bovarie learned that he had a damaged gall bladder with gall stones and blocked bile ducts. *Id.* On July 18, 2008 Bovarie saw Dr. Navavani (not defendant Navamani) and learned that he also had a blocked right kidney and enlarged spleen. FAC ¶ 59. Later that day Bovarie received a CT scan at Pioneer Memorial Hospital. FAC ¶ 61. He learned that the spleen was actually not enlarged but that in addition to the gall stones, Bovarie had nephrosis and that his right kidney was swollen. *Id.*

**Administrative Grievances.**

Bovarie filed two administrative grievances at various levels regarding the alleged denials of medical care. FAC ¶ 78. The first grievance was for an attempt to receive medical care due to the "original illness." FAC ¶ 79; Ex. D. In response, defendant Candi Cook, the medical appeals analyst, explained that Bovarie's medical request was already granted, and that no further tests or treatment were indicated to be necessary. FAC ¶¶ 79-87; Ex. D. Dr. Khatri responded at the first formal level, saying that he did not identify any abnormal gastric symptoms in Bovarie. FAC ¶ 83; Ex. A. Defendant Calderon, Health Care Manager, added to the second level response that Bovarie may seek a private consultation at his own expense. FAC ¶ 85; Ex. A. In the director's level decision, defendant Hammond, Staff Services Manager I, investigated the matter and noted Bovarie was receiving the treatment deemed medically necessary. FAC ¶ 87; Ex. A. Non-defendant Grannis, Chief of the Inmate Appeals Branch, signed the actual denial of the request. FAC Ex. A.

Bovarie filed his second grievance following his two consults with Dr. Aymar. He complained of Dr. Aymar's actions and questioned her medical licensing. FAC ¶ 88; Ex. E. Defendant Cook responded that no further tests or treatment were indicated to be necessary and that all health care staff are currently licensed with the appropriate medical boards FAC ¶ 89-93; Ex. E. Bovarie also received a letter from the Osteopathic Medical Board of California explaining that Dr. Aymar is currently licensed

in California and is in good standing. FAC Ex. K. Dr. Khatri responded at the first formal level that Dr. Aymar noted the symptoms had resolved and the blood tests and urinalysis she ordered were within normal limits. FAC ¶ 91; Ex. B. In the second level response, Dr. Barreras noted that Bovarie also saw Dr. Navamani and that if further medical services were required based on the tests that Dr. Navamani ordered, Bovarie would be told. FAC ¶ 93; Ex. B. In the director's level decision, defendant Robinson, Appeals Examiner and Supervising Registered Nurse II, investigated the complaint and noted that Bovarie is receiving medical care commensurate with community standards and that all health care staff are properly licensed. FAC ¶ 95; Ex. B. Non-defendant Grannis signed the actual denial of the request. FAC Ex. B.

**Relief Requested.**

Bovarie asserts that the Defendants should have provided at least the following services: referral to a nephrologist and other specialists, prompt abdominal ultrasound, CT scan and MRI, intravenous pyelogram, professional review of bloodwork, dialysis, prescriptions to address various issues, diet management and lithotripsy. FAC ¶ 112. He asserts that the failure to treat the original illness resulted in further significant injury, such as gall bladder disease, kidney stones, nephrosis, kidney damage, disease of the spleen, severe pain and other damage. FAC ¶ 172. Bovarie alleges that the Defendants acted intentionally with a deliberate indifference to his serious medical needs in violation of the eighth amendment and California law. FAC ¶¶ 173-175. He claims that he suffered and continues to suffer severe pain and suffering and emotional distress. FAC ¶ 176. Bovarie asks for general damages, special damages in the form of medical expenses and loss of income, exemplary and punitive damages, attorneys fees, costs, and injunctive relief in the form of medical care and new policies and procedures regarding health care for inmates. FAC ¶¶ 177-179.

## DISCUSSION

**I. Eleventh Amendment.**

Defendants Barreras, Calderon, Khatri, Manaig, Robinson, Cook, Ko, Hammond and Navamani move to dismiss the claims against them for monetary damages insofar as they are sued in their official capacities. They argue that the eleventh amendment bars Bovarie from seeking money damages against state employees in their official capacities. In his opposition, Bovarie states there is no eleventh

amendment conflict because he sues Defendants for monetary damages only in their individual capacities.

While the court appreciates that in the opposition, Bovarie states he does not seek money damages against Defendants in their official capacities, nothing in the FAC identifies that choice. Rather, Bovarie summarily asserts that at all times mentioned in the FAC the Defendants were acting under the color of state law, and that he sues the Defendants in their official and individual capacities. FAC ¶¶ 13 (Barreras), 16 (Calderon), 18 (Khatri), 21 (Manaig), 22 (Robinson), 23 (Cook), 25 (Ko), 27 (Hammond), 30 (Navamani). Further, no facts show that Defendants waived immunity.

Finally, even though defendants Tetteh, Aymar and Hodge did not specifically move to dismiss the claims against them for monetary damages insofar as they are sued in their official capacities, the court finds that they are entitled to the same eleventh amendment immunity. Under the court's authority to review complaints by incarcerated individuals proceeding in forma pauperis under 28 U.S.C. § 1915(e)(2), the court also recommends that Bovarie's claims for money damages against defendants Tetteh, Aymar and Hodge in their individual capacities be dismissed.

Based on these facts, the court **RECOMMENDS** that Defendants' motion to dismiss Bovarie's federal and state claims for money damages against defendants Barreras, Calderon, Khatri, Manaig, Robinson, Cook, Ko, Hammond, and Navamani in their official capacities be **GRANTED** and that the these same claims be dismissed against defendants Tetteh, Aymar and Hodge. The court further recommends that dismissal be **with prejudice**. Bovarie cannot plead facts sufficient to overcome the eleventh amendment bar to these claims. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989) (eleventh amendment prohibits damages actions against state officials acting in their official capacities).

## II. <u>Rule 12(b)(6) Motion.</u>

### A. Legal Standard.

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). For the sake of deciding the motion, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d

890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). This tenet does not extend, however, to legal conclusions cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. ___, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950.

Further, the court may consider exhibits attached to the complaint without converting the motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1017 n.3 (S.D. Cal. 2006). Where an exhibit contradicts allegations in the complaint, the court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit [to the complaint]." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. ___, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

**B. Pro Se Litigants.**

Where a plaintiff appears pro se in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, however, the court may not "supply essential elements of [a] claim that w[ere] not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

1982). The court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citing *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)).

**C. Section 1983 Claims.**

A § 1983 claimant must allege: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To prevail, a claimant must prove that a person acting under color of state law committed the conduct at issue, and the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

A person subjects another to the deprivation of a constitutional right--within the meaning of § 1983--if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citations and quotations omitted). Anyone who causes any citizen to be subjected to a constitutional deprivation is also liable. *Id*. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others that the actor knows or reasonably should know would cause others to inflict the constitutional injury. *Id*. at 743-744.

Liability, however, cannot be based upon respondeat superior or any other theory of vicarious liability. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-692 (1978). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The "touchstone" for determining when a plaintiff shows that a defendant proximately caused the alleged violation of the plaintiff's rights is "foreseeability." *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007).

/ / /

**D. Eighth Amendment Claim: Deliberate Indifference to Medical Needs.**

Deliberate indifference to an inmate's serious medical needs violates the eighth amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay, or intentional interference with a prisoner's medical treatment. *Id.* at 104-105; *see Broughton v. Cutter Labs*., 622 F.2d 458, 459-60 (9th Cir. 1980) (delay of six days in treating hepatitis was sufficient to state a claim of deliberate indifference); *Jones v. Johnson*, 781 F.2d 769, 770-771 (9th Cir. 1986) (allegation that jail medical staff would not treat plaintiff's painful hernia until it became strangulated stated a claim against medical personnel). Deliberate indifference lies somewhere between negligence and "conduct engaged in for the very purposes of causing harm or with the knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991).

Claims of deliberate indifference involve an objective and a subjective component. The objective inquiry addresses the seriousness of the inmate's medical need. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). A serious medical need exists if the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting *Estelle*, 429 U.S. at 104).

The subjective inquiry examines whether the prison official acted with a sufficiently culpable state of mind. *Id.* An official must (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2) actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health. *Farmer*, 511 U.S. at 837-838.

***1. Defendants Tetteh, Ko and Hodge.***

Bovarie alleges facts on behalf of dismissed plaintiff Wayne Wicken. He alleges that defendants Hodge, Tetteh and Ko conducted medical examinations of Wicken and that their care fell below eighth amendment standards. FAC ¶¶ 99-104. He explains the steps Wicken took to file an administrative grievance. FAC ¶¶ 105-109. He alleges that Tetteh, Ko and Hodge knew or should have known of Wicken's medical needs and were negligent. FAC ¶¶ 162-163. In his opposition, Bovarie acknowledges that Wicken was dismissed from this action "due to his failure to pay the initial filing fee

and because Bovarie, filing on his behalf, is not an attorney and cannot legally represent Wicken." Opp'n, p.5.

The allegations against defendants Tetteh, Ko and Hodge refer only to their alleged respective roles in the care of dismissed plaintiff Wicken. Bovarie does not allege that any of these defendants dealt with Bovarie at any point during the alleged acts. The court dismissed Wicken from this action on October 24, 2008 and denied Bovarie's motion for class certification on January 9, 2009. [Doc. Nos. 3, 8.] In dismissing Wicken, the court noted that Bovarie does not have the authority to represent the legal interest of any other party. Oct. 28 Order, p.3; *see Cato v. U.S.*, 70 F.3d 1103, 1105, n.1 (9th Cir. 1995). Bovarie acknowledges that Wicken is not a party to this lawsuit. *See* Opp'n, p.5.

Because Bovarie's allegations regarding Tetteh, Ko and Hodge only deal with dismissed-plaintiff Wicken, those allegations do not and cannot state a claim for deliberate indifference toward Bovarie. Therefore, the court **RECOMMENDS** that the motions to dismiss filed by defendants Tetteh, Ko and Hodge be **GRANTED** and that the dismissal be **with prejudice**. Bovarie cannot plead facts sufficient to overcome the bar to these claims.

***2. Defendants Cook, Hammond and Robinson.***

Bovarie alleges the following facts regarding defendants Cook, Hammond and Robinson. Cook is the Health Care Appeals Coordinator at Centinela and that as the coordinator, she is responsible for all medical appeals. FAC ¶ 23. She is the "gatekeeper" to medical care for inmates in that she personally diagnoses them to decide whether to grant or deny the appeal. *Id.* Cook participated at various levels of the appeals for both Bovarie's grievances. FAC ¶¶ 78-87, 91-93. In the first grievance, Cook partially granted the appeal at the informal level and noted that Bovarie went to triage and had a urinalysis, and that no further treatment was indicated. FAC Ex. D. At the next level, Cook submitted a medical request form on Bovarie's behalf so that a physician could see him. *Id.* As a result, Bovarie had a consult with Dr. Khatri. FAC ¶ 82. Regarding the second grievance, while Cook denied the different appeal levels for his complaint about Dr. Aymar, she based those denials on her reliance on the judgment of the trained medical providers. FAC Ex. A.

Hammond is an Appeals Examiner. FAC ¶ 27. He is responsible for providing medical care to all CDCR inmates and diagnoses for them. *Id.* Hammond, too, works as a "gatekeeper" for inmate

medical care. *Id.* Hammond reviewed Bovarie's director's level appeal for his first grievance. He noted that Bovarie "is receiving the treatment deemed medically necessary by . . . members of the [Centinela] medical staff." FAC ¶ 87; Ex. A. Robinson is a Supervising Registered Nurse who provides medical care to inmates as both a nurse and a medical appeals examiner at the director's level. FAC ¶ 22. She reviewed Bovarie's director's level appeal for his second grievance. FAC ¶ 95; Ex. B. She noted that "all health care staff are licensed properly" and that Bovarie "is receiving medical care commensurate with community standards." *Id.*

For the director's level appeals neither Hammond nor Robinson actually denied the appeals. FAC Ex. A. Grannis, Chief of the Inmate Appeals Branch, actually denied the appeals. *Id.* In denying the appeals Grannis relied on the investigations and reviews of Hammond and Robinson. *Id.*

**a. Vicarious liability.**

Bovarie claims that Cook, Hammond and Robinson became responsible for the medical providers' alleged deliberate indifference solely through their roles as investigators for an administrative appeals agency. This claim is akin to charging these Defendants with vicarious liability for the actions of the medical staff. Liability, however, cannot be based upon respondeat superior or any other theory of vicarious liability. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-692 (1978). Further, to have deprived Bovarie of any constitutional right, these Defendants would have had to engage in affirmative acts of deprivation, or participate in others' affirmative acts, to cause the deprivation. *Johnson,* 588 F.2d at 743.

Here, Cook, Hammond and Robinson investigated the facts and reviewed the opinions of the medical practitioners. This is not the type of direct participation in Bovarie's medical care that warrants imposition of section 1983 liability. Because these Defendants did not provide medical care to Bovarie, and did not otherwise directly participate in the medical providers' alleged acts, they cannot be the source of the alleged constitutional deprivation. Neither can they be held vicariously liable for the acts of the medical providers.

**b. Inference of substantial risk.**

Bovarie argues that Cook, Hammond and Robinson actively participated in the deprivation of medical care because they should have, among other things, consulted with medical professionals before

denying the appeals. Opp'n, pp.12-16. But to be liable for deliberate indifference to medical needs, these Defendants would had to have been aware of the facts and actually draw the inference that a substantial risk of harm existed. *Farmer*, 511 U.S. at 837-838. Here, Cook, Hammond and Robinson relied on the documentation and opinions of medically trained professionals to determine whether to grant the administrative grievances.

In the first grievance, Bovarie attempted to receive medical care due to the "original illness." FAC ¶ 79; Ex. D. Cook reviewed his health record, and in the first instance concluded the appeal was partially granted because Bovarie had received a nursing triage and had a urinalysis that turned up negative results. FAC Ex. D. When Bovarie appealed to the next level, Cook requested that Bovarie be seen by a doctor, and a doctor then saw Bovarie. *Id.*; FAC ¶ 82. In the next level of appeal, Cook relied on Dr. Khatri's assessment and responded that a doctor did see Bovarie and that he did not identify an abnormal gastric symptoms. FAC Ex. A. In sum, the FAC and exhibits show that Cook, a fact-gathering employee with no medical training, relied on the opinions of trained medical professionals to determine Bovarie's medical appeals regarding the first grievance. Based on the information in the exhibits to the FAC, Cook could not have drawn the inference, and did not actually draw the inference, that a substantial risk of harm existed as to Bovarie.

In the second grievance, Bovarie complained that Dr. Aymar provided inadequate treatment and raised questions regarding her medical licensing, asked that she be removed from her position, and requested that all medical practitioners be screened for complaints and malpractice suits. FAC ¶ 88; Ex. E. At the informal level, Cook denied the appeal and explained that all Centinela health care providers are licensed and in good standing and covered by malpractice insurance. FAC Ex. E. At the first formal level, Cook reiterated that all medical practitioners, including Dr. Aymar, are licensed and in good standing. FAC Ex. B. She partially granted that appeal, and noted that Dr. Aymar recorded Bovarie's symptoms, extensively reviewed his health records, ordered a urinalysis, and found the blood work and urinalysis yielded results within normal limits. FAC Ex. B. Cook said that following all that work by Dr. Aymar, Bovarie received a nursing triage referral to a second doctor's assessment. *Id.* At the next level of appeal, Cook again partially granted the appeal, and noted that Bovarie had received a nursing triage, saw a doctor and received medications and diagnostic tests. *Id.* She explained that following the

further test results, if further medical services were necessary, Bovarie would be notified. *Id.* This court finds that based on the exhibits to the FAC, Cook reasonably relied on the opinions of the medical practitioners. She could not have drawn the inference, and did not actually draw the inference, that a substantial risk of harm existed to as Bovarie.

Hammond also relied on the evidence and opinions of medical practitioners to advise Grannis that Bovarie was receiving proper medical care. In the first grievance, Hammond noted the history of Bovarie's treatment, and explained that under the relevant regulations only qualified medical personnel can diagnose illness and prescribe treatment, and that self-diagnosis is not appropriate. FAC Ex. A. He highlighted the medical records and opinions of the medical staff familiar with Bovarie's medical history, and that no compelling evidence warranted intervention, as Bovarie was receiving the treatment deemed medically necessary by the Centinela medical staff. *Id.* The FAC and exhibits show that Hammond, a fact-gathering employee with no medical training, reasonably relied on the opinions of trained medical professionals. Based on that reliance, he could not have drawn the inference, and did not actually draw the inference, that a substantial risk of harm existed as to Bovarie.

In the second grievance, Robinson noted that Bovarie was being treated and monitored for his medical condition, as he had received laboratory tests, multiple doctor evaluations and additional referrals. She also explained that all CDCR physicians, nurses, dentists, physician's assistants and nurse practitioners must complete a background investigation and be licensed in California to practice their professions, so there was no need to request a screening of those professionals. FAC Ex. B. Robinson encouraged Bovarie to participate in his treatment plan and ask questions when being evaluated or treated. *Id.* She said Bovarie could not dictate his own treatment because he lacked the requisite medical credentials, knowledge and expertise. *Id.* Robinson relied on the documentation in Bovarie's health records to find that Bovarie is receiving medical care commensurate with community standards. *Id.* The exhibits to the FAC show that Robinson could not have drawn the inference, and did not actually draw the inference, that a substantial risk of harm existed as to Bovarie.

Accordingly, the court **RECOMMENDS** that the motions to dismiss filed by defendants Cook, Hammond and Robinson be **GRANTED**. The court further recommends that the dismissal be **with prejudice** because Bovarie cannot plead facts sufficient to overcome the issues of vicarious liability and

the appeals examiners' abilities to draw and actually draw an inference of substantial risk.

***3. Defendant Aymar.***

Defendant Aymar moves to dismiss the eighth amendment claim and pendent state law claims against her. She argues that Bovarie's difference of opinion regarding his medical condition and course of treatment is insufficient to create liability under the eighth amendment. Further, insofar as Bovarie questions her license and ability to practice medicine, Dr. Aymar argues that her ability to practice is not at issue in this case and cannot serve as a basis for liability. She moves to dismiss the state law claims, arguing that if the court dismisses the federal claim, it will not have jurisdiction to hear the state law claims.

Dr. Aymar was the fourth medical professional to consult with Bovarie. She saw him on September 19 and October 25, 2007. FAC ¶¶ 45-48. Bovarie alleges that when he complained of kidney and liver-related symptoms to her, she told him he was probably suffering from depression. *Id.* He says she should have ordered a MRI but did not. FAC Ex. E. It was only after the second visit, when Bovarie repeated his complaints of pain, that Dr. Aymar ordered a urinalysis. FAC ¶ 51. Bovarie alleges that Dr. Aymar did not examine him or ask questions regarding his complaints, and made it clear to him that no care would be provided. FAC Ex. B.

Dr. Aymar noted that she saw Bovarie in September to review his laboratory results, which were within normal limits. *Id.* She noted that the fatigue symptoms from June had resolved and that there were no gastrointestinal changes. *Id.* After the October visit, Dr. Aymar said she reviewed Bovarie's health record and ordered a urinalysis, which was also essentially within normal limits, so she did not order further medical treatment. *Id.*

Several months later, in July 2008, Bovarie learned that he had a damaged gall bladder with gall stones and blocked bile ducts, nephrosis and a blocked and swollen right kidney. FAC ¶¶ 57, 59, 61.

Based on the above allegations, this court finds that Bovarie has adequately pled that he had a serious medical need. Further, in alleging that he complained to Dr. Aymar on two occasions about his pain, Bovarie has adequately pled facts to show that he told Dr. Aymar of facts from which she could possibly draw an inference and that she actually drew an inference that a substantial risk of harm existed. By alleging that in response to his complaints of physical pain Dr. Aymar told Bovarie that he

was depressed--and did not take further action other than a urinalysis--Bovarie has adequately pled that Dr. Aymar disregarded the risk to his health. While the exhibits show that Dr. Aymar noted that Bovarie's blood work and urinalysis had normal results, they do not refute his allegations that Bovarie complained to Dr. Aymar about his physical pain and that those complaints went unaddressed. This court, therefore, finds that Bovarie has alleged enough facts to plead an eighth amendment claim against Dr. Aymar. Whether that claim has merit will be determined through this litigation.

To the extent Bovarie bases his eighth amendment claim on Dr. Aymar's ability to practice and her medical licensing, the court recommends denying that claim. The exhibits show that all health care staff are currently licensed with the appropriate medical boards FAC Ex. E. Also, Dr. Aymar is currently licensed in California and is in good standing with the Osteopathic Medical Board of California. FAC Ex. K. Dr. Aymar's ability to practice medicine is not in question and cannot be a basis for eighth amendment liability. No amendment of the pleadings will be able to cure that deficiency.

Based on the foregoing, the court **RECOMMENDS** that Aymar's motion to dismiss be **GRANTED in part** and **DENIED in part**. The motion should be granted to the extent that Bovarie alleges liability based on Dr. Aymar's ability to practice medicine, and the dismissal should be **with prejudice**. It should be denied with respect to Bovarie's other allegations regarding the eighth amendment claim, and denied as to the request to dismiss the pendent state law claims.

**E. Injunctive Relief Claims.**

Defendants Ko, Barreras, Khatri, Calderon, Manaig and Navamani move to dismiss the injunctive relief claims because they are matters subject to the jurisdiction of the federal district court handling the class action *Plata v. Schwarzenegger*, N.D. Cal. Civ. Case No. C-01-1351. These Defendants ask this court to take judicial notice of the *Plata* class action. Bovarie argues that his injunctive relief claims should not be dismissed because the requests in this case and the requests in *Plata* cannot be exactly alike, and, even if they are, the outcomes of the two cases may vary.

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." "A court shall take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). A court may take judicial notice of court records. *See U.S. v. Author Services, Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986).

Here, Defendants ask the court to "take judicial notice of this well-known class action lawsuit and of the fact that it governs all of the injunctive relief claims pressed by Plaintiff in this case." Other than the name and case number, Defendants did not supply the court with the necessary information to take judicial notice. At a minimum, they should have included a copy of the docket sheet and operative complaint that shows the injunctive relief requested. While the court is aware of the *Plata* class action, without the necessary information that specifies the relief sought in *Plata*, the court cannot compare the relief sought in that case to the relief Bovarie requests here. Once that information is provided, the court can then determine if the *Plata* class action actually involves the same subject matter and relief sought in this case.

For these reasons, this court **RECOMMENDS** to **DENY without prejudice the request for judicial notice,** and consequently **DENY without prejudice the motions to dismiss the injunctive relief claims**.

## CONCLUSION

For all of the above reasons, the court **RECOMMENDS** the following disposition with regard to Defendants' motions to dismiss:

1. **GRANTED** as to Bovarie's claims for money damages to the extent defendants Barreras, Calderon, Khatri, Manaig, Robinson, Cook, Ko, Hammond, Navamani, Tetteh, Aymar and Hodge are sued in their official capacities and that these claims be **DISMISSED with prejudice**.
2. **GRANTED** as to defendants Tetteh, Ko and Hodge be and that these claims and these defendants be **DISMISSED with prejudice**.
3. **GRANTED** as to defendants Cook, Hammond and Robinson and that these claims and these defendants be **DISMISSED with prejudice**.
4. **GRANTED in part** in part as to defendant Aymar, insofar as Bovarie alleges an eighth amendment claim based on Dr. Aymar's ability to practice and that the dismissal be **with**

**prejudice**, and **DENIED in part** as to the remaining claims.

5. **DENIED without prejudice** as to the request for judicial notice.

6. **DENIED without prejudice** as to the motions to dismiss the injunctive relief claims.

7. If this Report and Recommendation is adopted in its entirety, that the remaining defendants Barreras, Calderon, Khatri, Manaig, Navamani and Aymar be ordered to file an answer to the remaining eighth amendment and pendent state law claims within 20 days of the district judge's order.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than ***February 12, 2010*** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***February 22, 2010.*** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 21, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court