1

2

3

4

5

6

7

8                                    **UNITED STATES DISTRICT COURT**

9                                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | MARCUS BOVARIE,                                          )    Civil No.08cv1661 LAB (NLS)
   |                                                          )
   |                              Plaintiff,                  )    **ORDER:**
12 | v.                                                       )
   |                                                          )    **DENYING PLAINTIFF'S EX PARTE**
13 | ARNOLD SCHWARZENEGGER, Governor;                         )    **MOTION TO EXTEND DISCOVERY**
   | PRIVATE HEALTH CARE COMPANY,                             )    **CUTOFF [Doc. No. 85] AND**
14 | "Company X"; MATTHEW CATES,                              )    **REQUIRING DEFENSE COUNSEL TO**
   | Secretary of Corrections; JAMES E.                       )    **PROVIDE ADDITIONAL DISCOVERY**
15 | TILTON, Former Secretary of Corrections;                 )
   | MICHAEL SMELOSKY, Warden, Centinela                      )
16 | State Prison; V.M. ALMAGER, Former                       )
   | Warden, Centinela Prison; G.J. GIURBINO,                 )
17 | Former Warden, Centinela Prison; N.                      )
   | BARRERAS, M.D., L. CALDERON, Health                      )
18 | Care Manager, Centinela Prison; D.                       )
   | KHATRI, M.D., SUMMER AYMAR, D.O.;                        )
19 | MANAIG, R.N.; J. ROBINSON, R.N.;                         )
   | CANDI COOK, Medical Appeals Analyst;                     )
20 | TETTEH, M.D.; KO, M.D.; HODGE, N.P.;                     )
   | C. HAMMOND, Staff Services Manager I;                    )
21 | NAVAMANI, M.D.; Does 1-20,                               )
   |                                                          )
22 |                              Defendants.                 )
   |                                                          )
23

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

# I.    INTRODUCTION

On September 10, 2008, Marcus Bovarie (Plaintiff), a California prisoner proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 civil rights action complaining of deliberate indifference to his medical needs.  Presently before the Court is Plaintiff's Second *Ex Parte* Request to Extend Discovery.  [Docket No. 85.]

On April 26, 2010, the Court issued a Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings.  [Docket No. 64, "Scheduling Order."]  The Scheduling Order provides, in relevant part:

> All discovery, including experts, shall be completed by all parties on or before **November 29, 2010**.  "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure.

[Scheduling Order ¶ 6.]

On October 15, 2010, Plaintiff filed an *ex parte* application to extend the time to complete discovery.  [Docket No. 72.]  Plaintiff sought to extend the discovery cutoff by 180 days, claiming that the amount of outstanding discovery was just cause for such a long extension.  Defendants did not oppose the application, instead seeking an additional 60 days to respond to outstanding discovery and to extend the discovery period for at least 120 days.  On November 2, 2010, the Court granted in part and denied in part Plaintiff's request.  [Docket No. 78.]  The Court ordered Defendants to respond to all outstanding discovery no later than December 3, 2010 and extended discovery for 90 days, to February 28, 2010.  The court specifically found the requested 120-180 day extension to be "excessive."  [*Id.*]  On February 4, 2011, Plaintiff filed the second *ex parte* motion to extend the discovery cutoff currently before the Court.  [Docket No. 85.]  Defendants filed a statement of Non-Opposition to the motion, reasoning that if Plaintiff propounds discovery on the California Department of Corrections and Rehabilitation ("CDCR"), the discovery process will be prolonged because the CDCR is likely to object and move to quash the subpoenas.

For the following reasons, the second *ex parte* request to extend the discovery cutoff  is DENIED.

## II.    DISCUSSION

In general, the pretrial scheduling order can only be modified "upon a showing of good cause." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607, 608 (9th Cir.1992), *citing* Fed.R.Civ.P. 16(b); *see also* Docket No. 68 (denying request to extend time to amend pleadings.)  The most relevant factor in determining whether good cause exists is whether the party requesting an extension of time can show that the existing deadlines could not be met despite the party's diligence.  *Zivkovic v. Southern California Edison Company*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations omitted).  If the party was not diligent, the inquiry should end and a motion for modification should be denied.  *Id*

### A.    Plaintiff's Diligence

The primary question before the Court is whether Plaintiff has been diligent in attempting to meet the current deadline. Plaintiff does little to address the question before the court: whether he has been diligent in pursuing discovery.  The only discovery that Plaintiff has informed the court about was propounded between August 19, 2010 and September 14, 2010.  (Motion to Compel at p. 1).  This action was filed on September 10, 2008.  The Scheduling Order setting the close of discovery for November 29, 2010 was filed on April 26, 2010.  Plaintiff does nothing to explain why he waited until at least half of the discovery period had passed to issue this discovery.  Given that the case had already been pending for over a year and a half when the Scheduling Order issued, this shows a lack of diligence.  In light of Plaintiff's position as an incarcerated *pro se* litigant, the Court granted the first extension of discovery despite this lack of diligence.  The Court put Plaintiff on notice, however, that additional time would be "excessive."

Plaintiff states "he has done all he can with the enlargement [the 90 days granted by the court] but the complexity of discovery, the need of additional discovery and conflicting legal scheduals [sic] force Plaintiff to request additional time." [Ex Parte Request at 1.]  Plaintiff explains that he has filed two motions to request subpoenas and a motion to compel since November and plans to file a second motion to compel soon, but  points to no discovery actually propounded during this time. [*Id*.]  Plaintiff then states that he has an unrelated §1983 action in the pre-trial stage that has required numerous filings.  Plaintiff continues: "actually, this other case will require an enlargement of time itself as Plaintiff will have to go out to court to prosecute."  [*Id*.]

Plaintiff's First Request for Subpoenas was filed on December 30, 2010 and Granted on January 19, 2011. [Docket Nos. 79-80.] The Order explained: "Pursuant to Federal Rules of Civil Procedure 45(a)(3), the Clerk of Court 'must issue a subpoena, signed but otherwise in blank, to a party who requests it.' FED.R.CIV.P. 45(a)(3)." The Order and subpoenas were mailed on January 19, 2010. [Docket No. 80.] On January 24, 2011, presumably unaware of the Order granting the first request, Plaintiff filed a second request for subpoenas. This Request was granted on February 9, 2011. [Docket No. 87.]

The unrelated action to which Plaintiff refers is *Bovarie v. Woodford*, 06 CV 687 JLS BGS (the "06 action"), a separate action under §1983 alleging a violation of Plaintiff's right to access to the courts.[1] Plaintiff posits that "there will be a good month and a half to two months (and maybe longer)" where he will be unable to receive or file any documents because he will be in trial in the 06 action. [*Id.* at 6.]

Plaintiff claims that he has been had to file numerous documents in relation to the '06 action. A review of the docket in the 06 action reveals the following filings:

1.  Pretrial Disclosures consisting of 8 pages on January 7, 2011 [Docket No. 133];

2.  Amendment to the Pretrial Disclosures on February 1, 2011, consisting of an additional 3 pages. [Docket No. 137];

3.  Memorandum of Fact and Contentions of Law, consisting of 20 pages [Docket No. 139] filed on February 1, 2011;

4.  Meeting of Counsel, consisting of 6 pages plus photocopied exhibits also filed on February 1, 2011. [Docket No. 141.];

Plaintiff also attempted to file: 1) proposed pretrial order [Docket No. 145, rejected because it was already filed] on February 3, 2011; 2) petition for Writ of Habeas Corpus Ad Testificandum [Docket No. 146, rejected for multiple reasons] on February 7, 2011, 3) Final Pretrial Conference Statements and Additions to Proposed Order [Docket No. 149, rejected as untimely] on February 14, 2011; and 4) Additional Final Pretrial Conference Statements [Docket No. 152, rejected as untimely] received on February 14 and rejected on February 22, 2001.

---

[1] In the 06 action, Plaintiff alleges that various Defendants denied him sufficient access to the law library and negatively impacted his ability to present his direct appeal and habeas claims.

When Plaintiff filed the Ex Parte Request, the Pretrial Conference in the 06 action was scheduled for February 17, 2011. The Pretrial Conference has since been continued to April 21, 2011. [Docket No. 151.] Accordingly, Plaintiff will not have to appear in Court or file any additional papers in the '06 action until April and the 06 action provides no further impediment to completing discovery in this case.

Moreover, the Scheduling Order required that all discovery be initiated by the parties a sufficient period of time in advance of the cutoff so that it may be completed by the cut off date. A party has 30 days to respond to interrogatories, requests for production of documents, and requests for admissions. Fed. R. Civ. P. 33-35. Accordingly, with a discovery cutoff date of February 28, 2011, discovery had to be initiated no later than January 27, 2011. Thus, any future requirements of the 06 action are not relevant to the question of Plaintiff's diligence. As the prior review of the filings in the 06 action reveals, Plaintiff did not file anything in the 06 action in between the January 7, 2011 filing of the Pretrial Disclosures consisting of 8 pages and the amendment to those disclosures on February 1, 2011, consisting of an additional 3 pages. [Docket No. 137]. While Plaintiff was no doubt working on the Memorandum of Fact and Contentions of Law, and Meeting of Counsel documents filed on February 1, 2011, Plaintiff does not explain why he could not have also propounded discovery during that time as well.

Finally, Plaintiff does not explain why he waited almost two months after receiving notice that discovery would only continue for another four months (the one month remaining in the original period plus the three month extension) to file his request for subpoenas. Plaintiff did not file a single document in the 06 action during that two month delay. Accordingly, while Plaintiff can show diligence during the period from mid December of 2010 to mid February 2011, he cannot show any diligence from April to mid December, and especially not from the issuance of the November 2, 2010 extension to whenever he started working on the pretrial disclosures that he filed on January 7, 2011 in the 06 action.

**B.    Other Factors**

The Ninth Circuit has held that additional factors may be considered:

1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district

court, and 6) the likelihood that the discovery will lead to relevant evidence.

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir.1995), judgment vacated on other grounds, 520 U.S. 939 (1997); *see also Tyco Thermal Controls LLC v. Redwood Industrials*, 2010 WL 1526471 at *4-5 (N.D. Cal. Apr 15, 2010).  Additionally, the Federal Rules of Civil Procedure "should be administered to "secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

### 1. The Trial Date

Although trial is not imminent, the deadline for filing pretrial motions is March 14, 2011 and the final pretrial conference is set for June 13, 2011.  Any further extensions of time will require the court to extend the deadline for filing pretrial motions and to continue the pretrial conference date.  Thus, extending discovery will prevent this 2008 case from moving smoothly to trial.  Accordingly, this factor weighs somewhat against granting the request.

### 2. Opposition to the Request

Defendants did not oppose the motion, but indicated that the CDCR would likely oppose any subpoenas issued, creating collateral ligation to resolve the disputes.  Thus, Defendants do not oppose the request, but do plan to oppose the discovery sought.  Accordingly, this factor is neutral.

### 3. Prejudice to the Non-Moving Party

Defendants have not indicated any prejudice that they would suffer if the discovery period is extended.  This factor weighs in favor of granting the request.

### 4. Diligence of the Plaintiff

As described above in detail, there is no evidence that Plaintiff has been diligent through most of the discovery period.  The Court is cognizant that Plaintiff is representing himself and must conduct discovery while incarcerated.  Nonetheless, Plaintiff's failure to show any effort to propound discovery until August of 2010, four months into a seven month discovery period and almost two years after the case was filed, indicates a lack of diligence.  Similarly, Plaintiff's failure to show any effort to propound discovery through half of discovery time left after it was extended also shows a lack of diligence.  Accordingly, this most important factor weighs heavily against granting the request.

### 5. Foreseeability of Discovery Sought

1    Other than the GFR test results, described *infra*, Plaintiff has not argued that any of the discovery

2    he claims to still need was not forseeable at the outset of this action.  Accordingly, this factor weighs

3    against granting the request to extend discovery.

4              6.    Likelihood that Discovery Will Lead to Admissible Evidence

5                    a.    Documents Described in Motions for Subpoenas

6    Plaintiff first argues that he has two motions pending for subpoenas, which describe the

7    information he expects to find.  Plaintiff's first motion for subpoenas was granted on January 19, 2011.

8    [Docket No. 80.]² In the first motion for subpoenas, Plaintiff explains that he is seeking:  1) Plaintiff's

9    mental health and medical records; 2) inmate appeals log numbers CEN-D-06-00211 and CEN-D-07-

10   873l and 3) all inmate appeals filed at Centinela between June 1, 2005 and June 1, 2007 regarding

11   complaints about food.

12   Plaintiff should have all of his mental health and medical records.  In granting in part Plaintiff's

13   Motion to Compel Discovery, the Court ordered Defense Counsel to provide Plaintiff with a complete

14   set of his medical records.  [Docket No. 89 at 12-13.]   As described in that Order, Counsel for

15   Defendants has access to these records and a Defendant may be ordered to produce documents within

16   the control of its counsel.  *Woodall v. California*, 2010 WL 4316953at *5  (E.D. Cal. Oct. 22, 2010),

17   *citing  Mitchell v. Adams*, 2009 WL 674348 at *9 (E.D. Cal. Mar.6, 2009)(warden sued in individual

18   capacity had constructive control over documents he could obtain from the CDCR); *see also*

19   *Ochotorena v. Adams*, 2010 WL 1035774, *3 (E.D. Cal. Mar 19, 2010); *Moody v. Finander*, 2010 WL

20   3911462 (S.D. Cal. October 1, 2010)(requiring individual defendants to respond to document request for

21   records in the custody of CDCR); *Johnson v. Vord*, 2008 WL 3892106 (E.D. Cal. August 21, 2008).

22   Because counsel for Defendants has already been ordered to produce to Plaintiff any medical or mental

23   health records that Plaintiff cannot verify as being already in his possession, the need for medical

24   records does not present a  reason to extend the discovery period.

25   Plaintiff is also seeking inmate appeals log numbers CEN-D-06-00211 and CEN-D-07-873l.

26

27   ———————————
          ²The Court pointed out that, despite his IFP status, Plaintiff would have to provide appropriate
28   fees.  There is no indication in the file as to whether Plaintiff has the ability to provide the appropriate
     fees.

1   These are not Plaintiff's appeals at issue in this lawsuit.  Instead, Plaintiff seeks copies of appeals

2   regarding "numerous serious violations of Health and Safety Code in the handling and delivery of food

3   for inmates at Centinela State Prison."  (Ex Parte Request at 2.)  Plaintiff is also seeking all inmate

4   appeals regarding the food at Centinela between June of 2005 and June of 2007.  Plaintiff claims that

5   these documents will show a serious problem with the food at Centinela.  Plaintiff further claims that

6   these documents are relevant because Defendant Manaig referred Plaintiff for a mental health screening

7   after Plaintiff claimed that the food had made him sick.  According to Plaintiff, evidence of multiple

8   complaints about the food would "bring into question Defendant Manaig's motivation to send a sick

9   inmate to Mental Health instead of a doctor."  (Ex Parte Request at 4.)

10          First, complaints by prisoners about the food in prison is hardly surprising and it is unlikely that

11  these documents would prove a serious health risk from the food.  Additionally, even if Plaintiff could

12  show that the food posed a health risk, the documents would only be relevant under Plaintiff's theory if

13  they also showed that Defendant Manaig was aware of an actual health risk.  Moreover, the burden of

14  locating and disclosing private records of an untold number of inmates would likely outweigh any

15  tangential relevance of the document.  If the burden outweighed the benefit, a motion to compel these

16  documents would not be successful, meaning that the discovery sought would not actually lead to

17  relevant evidence being discovered.[3]

18                          b.      Documents Described in Second Motion for Subpoenas

19          In his second motion to request subpoenas, Plaintiff seeks: 1) Medical and mental health records

20  of inmate Wayne Wicken; 2) all inmate appeals and responses at all levels regarding Defendants

21  Barreras, Khatri, Navamani, Aymar, Manaig, and Calderon; 3) Medical records of inmates Michael

22  Blundt and Roy Reddix; 4) Test results showing Plaintiff's glomerular filtration rate; and 5) all records

23  of any medical appeal filed by inmate Wicken on August 7, 2007.

24                          (1)      Records and Appeals relating to Wicken, Blundt and Reddix

25          Mr. Wicken, Mr. Blundt and Mr. Reddix are not Plaintiffs in this action and their mental health

26  ───────────────

27          [3]Of course, the court expresses no opinion as to the outcome of a motion that may be filed later
    in this case.  If the issue arises, the court would allow Plaintiff the opportunity to fully elaborate his
    theories of relevance and would require the Defendants to put forth specific evidence of burden before it
28  could reach any decision.

1  and inmate appeals are not relevant.  Plaintiff claims that Defendant Manaig improperly referred him to

2  mental health in a deliberate attempt to delay Plaintiff's necessary medical care.  As described above, the

3  fact that other inmates complained about the food is, at best, tangentially relevant to the issue of whether

4  Defendant Manaig  perceived a serious health risk and then acted in conscious disregard of that risk.

5  Plaintiff further argues that inmate Wicken is dead, and therefore, has no privacy rights.  Plaintiff is

6  mistaken; all privacy rights are not surrendered at death.  *Marsh v. County of San Diego*, 2007 WL

7  3022378 (S.D. Cal. Oct. 15, 2007) at *2, citing Powell v. United States*, 584 F.Supp. 1508, 1526 (N.D.

8  Cal.1984).

9        In short, the fact that prisoners complain about prison food is well known.  Accordingly, any

10  small relevance to issues in this case would be outweighed by the burden to the privacy interests of the

11  inmates.

12  (2)      All Appeals filed against Defendants

13        Plaintiff is also seeking all appeals against all defendants.  This same issue arose in the motion to

14  compel recently decided and the Court determined that appeals by other inmates are simply not relevant.

15  [Docket No. 89 at 7-8, *citing  Holestine v. Terhune*, 2003 WL 23281594, * 10 (N.D. Cal. Nov. 21,

16  2003)(denying production of appeals of other inmates.); *Garrett v. Walker*, 2007 WL 3342522 (E.D.

17  Cal. Nov. 9, 2007)(finding burden outweighed relevance for all appeals of deliberate indifference to

18  inmate health and safety); *Blue v. Grannis*, 2007 WL 2758025 (E. D. Cal. Sept. 21, 2007)(denying

19  motion to compel all grievances against defendant because "evidence of prior accusations against

20  defendant do not bear on any material issue in this matter.")  Moreover, as described above, the burden

21  of locating all inmate appeals for a two year period would likely outweigh any tangential relevance of

22  the documents.

23  (3)     Glomerular Filtration Rate Tests

24        Finally, Plaintiff is seeking all Glomerular Filtration Rate ("GFR") tests that show his GFR

25  levels from 2000 to 2011.  The Court has already required Defense counsel to insure that Plaintiff has

26  received or will receive all of his medical records, including GFR test results.

27        Accordingly, the Second Motion for Subpoenas provides no great likelihood of leading to any

28  admissible evidence.

9

c.      Documents Sought in the Motion to Compel

Plaintiff asserts that his then pending Motion to Compel Discovery is likely to reveal additional relevant evidence.  The Court decided Plaintiff's Motion to Compel on February 22, 2011 and ordered additional responses no later than March 9, 2011 from Defendant Calderon as to a few discrete topics. The motion was denied in all other respects.  Accordingly, nothing in the motion to compel warrants an extension of the discovery period.

d.      Documents Sought in a Future Motion to Compel

Plaintiff claims that he must file a motion to compel answers to discovery from Defendant Manaig.  The Scheduling Order provides a time frame of 45 days from the time responses are served to file a motion to compel.  Plaintiff's time to file a motion to compel is independent of any extension of the discovery period and provides no reason for the extension of the time to initiate new discovery.

e.      Other Discovery Plaintiff May Seek

Plaintiff asserts that he "has additional questions" for Defendant Manaig regarding the allegedly fraudulent referral to mental health.  Plaintiff neither explains what these questions are nor why he did not seek the answers in the discovery already propounded on Defendant Manaig.  Accordingly, Plaintiff has not shown any likelihood that these "additional questions" for Defendant Manaig would likely lead to admissible evidence.

Plaintiff also seeks to discover the number of prescriptions for pepto bismol and similar over the counter medications issued by Centinela in 2006 and 2007.  The burden of searching every inmate medical record would likely outweigh any relevance of evidence of prescriptions to other patients. Plaintiff also seeks to know about Manaig's ability to issue prescriptions, but does not say why.  Finally, Plaintiff would like admissions as to drugs prescribed for him.  This information would be contained in Plaintiff's medical records.

In sum, after extensively reviewing all of the discovery Plaintiff seeks to conduct, the court concludes that the likelihood that additional discovery would lead to relevant evidence is low.

**C.      Evaluating All the Factors**

The most important question before the court is Plaintiff's diligence in pursing discovery in this action.  Other than a brief period of time for filing pretrial motions in the 06 case, Plaintiff does not

explain why he could not complete discovery in either the original 7 months allowed for discovery or the 3 months extension. In fact, Plaintiff was put on the notice by the November 2, 2010 order that it would be "excessive" to extend discovery beyond the three month extension given in that Order. Accordingly, Plaintiff has not shown sufficient diligence to extend the discovery period. Moreover, the discovery Plaintiff now seeks was foreseeable earlier in the litigation and should have been requested by now. Finally, the additional discovery sought by Plaintiff is unlikely to lead to relevant evidence.

Evaluating all the factors, the Motion to Extend Discovery is DENIED.

**III.    CONCLUSION**

For the foregoing reasons, It Is Hereby Ordered that:

1.    The Ex Parte Request to Extend Discovery is DENIED; and

2.    Defense Counsel shall, no later than **March 14, 2011**, ensure that Plaintiff has a copy of all of his mental health and medical files, including but not limited to GFR results.

**IT IS SO ORDERED.**

DATED:  February 25, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

11

08cv1661 LAB (NLS)