# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS BOVARIE, et al., | CASE NO. 08cv1661-LAB (NLS) |
| Plaintiffs, | **ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |

Two Defendants remain in this case — Dr. Summer Aymar and Nurse Manaig. On March 14 of last year, each filed a summary judgment motion. Magistrate Judge Stormes, in a Report and Recommendation that she issued on September 21, recommends that the motions be granted. Bovarie filed objections to Judge Stormes' R&R just after Christmas, and in early January of this year the Defendants each filed a reply. The Court "must review [Judge Stormes'] findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## I.   Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, it is the Defendants' burden to show there is no factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, they must show that Bovarie lacks evidence to support his claims. *Id.* at 325. If they make that

showing, Bovarie must set forth "specific facts" to show there is a genuine issue for trial. *Id.* at 324.

The Court considers the record as a whole and draws all reasonable inferences in the light most favorable to Bovarie. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The Court may not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Not all alleged factual disputes will serve to forestall summary judgment; they must be both material and genuine. *Id.* at 247–49. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citations omitted).

## II.     Bovarie's 8th Amendment Claim

The first claim that Judge Stormes considers is Bovarie's § 1983 claim. Here, Bovarie alleges that Aymar and Manaig were deliberately indifferent to his medical needs in violation of the Eighth Amendment's ban on cruel and unusual punishment. The law here isn't in dispute. It *is* a violation of the Eigth Amendment to be deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "serious medical need is one that if left untreated could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 104. Deliberate indifference arises only where a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference, in this sense, is something worse than malpractice, or even gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Indeed, a deliberate indifference claim necessarily fails if a prisoner can register nothing more than a difference of opinion regarding his diagnosis and treatment. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### A. Aymar

Judge Stormes concludes that Aymar is entitled to summary judgment on Bovarie's § 1983 claim because "the uncontradicted evidence does not contain any evidence indicating that Defendant Aymar had drawn an inference of substantial risk of harm." (R&R at 18.) That is, even if Bovarie *can* establish that he had a serious medical need, he *cannot* establish that Aymar was indifferent to it. The Court will consider Bovarie's objections to this conclusion in sequence.

#### 1. Objection 4

Bovarie first takes issue with the R&R's statement that "when Plaintiff saw Nurse Manaig on September 12, 2007, he indicated that he did not have any flank pain at that visit." (R&R at 17.) According to Bovarie, that's not true. He claims he explained to Manaig that he'd been experiencing severe pain for three months. The record of the visit, however, suggests that Bovarie was seen for pain in his right flank that he'd *been* experiencing for three months, but that he reported no pain at the time of the visit. (Dkt. No. 91-3, AGO 149.) Now, Bovarie offers no evidence to the contrary.[1] Objection 4 is **OVERRULED**.

//

---

[1] Bovarie does reference Objection 2(c), in which he says that Manaig was incorrect in noting that he reported no pain at the time of his visit. He then says, "[I]f this is not included in his response to MSJ he includes this in an affidavit at exhibit B, supra." In Affidavit 11, attached to his objections, Bovarie explains further:

> At every visit to medical during the entire time relevant to the First Amended Complaint I informed whoever it was that was seeing me, doctor or nurse, of my severe pain in the area of my right kidney. I would explain how long it had been going on and that it was so bad it would wake me up at night and leave me sweating and shaking. During every contact with Defendant Manaig I would tell him all of this even when I was in medical for unrelated issues. Also, on the Sept. 8, 2007 visit with Manaig I was in pain and I told him I was in serious pain.

Assuming the Court can even take into account an affidavit that Bovarie prepared *after* Judge Stormes' issued her R&R, nothing in these statements contradicts Judge Stormes' finding that Bovarie didn't complain of pain to Manaig on September 12. It's worth adding that it is *Aymar*'s knowledge that's at issue here. Thus, even if Bovarie did report ongoing pain to Manaig on September 12, and Manaig's notes of the visit are incorrect, this cannot be the building block of a deliberate indifference claim against Aymar, who presumably read Manaig's notes and could only go off of what they said.

### 2. Objection 5

Bovarie was treated twice by Aymar, first on September 19, 2007 and then on October 25 as a follow-up. The R&R notes that "[o]n the September 19, 2007 visit with Dr. Aymar, Plaintiff indicated that his fatigue had resolved." The record supports this. (*See* Dkt. No. 92-5, Ex. 15.) Bovarie objects, referencing an affidavit he submitted in his opposition to Aymar's summary judgment motion.

> On 9/19/2007, I saw Summar Aymar, D.O. for a doctor appointment. I explained to her my original illness which had me bed ridden for 10 days and had symptoms of severe kidney pain, exhaustion, weakness and loss of equilibrium and that I was still suffering from severe stabbing pain in my right kidney, fatigue and weakness and that the fatigue had improved slightly.

(Dkt. No. 102-1, Plaintiff's affidavit 6.) This is simply contradicted by the evidentiary record. Bovarie's objection is therefore **OVERRULED**.

### 3. Objection 6

Looking at the record, Judge Stormes concluded that "Plaintiff made no medical requests relating to kidney pain between September 12, 2007 and December 12, 2007, although he did make two requests relating to other health issues." (R&R at 17.) The medical records support this conclusion, but citing the same affidavit that he submitted along with his objections, *see supra* n.1, Bovarie argues that the records are wrong. He references an inmate grievance form in which he did complain of kidney pain, but a grievance is not necessarily a request for medical treatment.[2] Moreover, one grievance was filed on June 21, 2007 and made its way through two levels of review before Aymar met with Bovarie for the first time. (Dkt. No. 6-1, Ex. D.) There is also no evidence that this grievance was provided to Aymar so that it could inform her diagnosis and treatment of Bovarie. The

---

[2] Bovarie argues that a former Defendant doctor, Khatri, "agrees inmates may view medical appeals as a form of request for care." (Obj. at 8.) That is a misrepresentation. Bovarie sent to Khatri a Set of Requests for Admission, one of which was that "An inmate appeal that seeks medical care is, in effect, a request for medical care." (Obj., Ex. A, RFA 7.) In fact, Khatri registered several objections to the form and substance of the request, and gave only a highly contingent, narrow-tailored answer: "Construing the request as a general factual question about the possible import that may be intended by some inmates in submitting inmate appeals regarding medical care, Defendant D. Khatri, M.D. admits that, from the perspective of some but not all inmates, it might be the intended result that an inmate appeal seeking medical care is, in effect, a request for medical care."

second grievance Bovarie mentions was filed on October 28, 2007 *after* his second appointment with Aymar. It couldn't possibly have been available to Aymar, then, at the time she saw Bovarie. Objection 6 is **OVERRULED**.

### 4. Objection 7

Bovarie argued in opposition to summary judgment that Aymar was deliberately indifferent to his serious medical needs because she didn't palpitate the areas of his kidney and liver. The R&R suggests that this "does not establish that Dr. Aymar either 1) was aware of facts from which an inference could be drawn that a substantial risk of harm exists or 2) that she drew such an inference, or 3) that she nonetheless disregarded the harm." (R&R at 17.) Bovarie disagrees with this. He argues that Aymar had ample evidence of his suffering and "deliberately failed to do a complete examination of him." (Obj. at 8.)

The record is clear that Aymar saw Bovarie on September 19, 2007, at which point, according to Aymar, Bovarie complained of feeling fatigued over the previous few months and believed his kidneys were the reason, *and* also complained about his allergies. Aymar conducted a physical examination of him and reported no problems with his cardiovascular system, lungs, abdomen or extremities. She did note that his eyes appeared reddened. She reviewed lab results from August 2007 and saw nothing that raised any medical concerns. For treatment, Aymar ordered Claritin and eye drops for Bovarie. (*See* Dkt. No. 92-2, Aymar Decl. ¶¶ 3–6; Dkt. No. 92-5, Ex. 15.) Bovarie may believe Aymar's exam of him was cursory and insufficiently responsive to his complaints of pain, but that disagreement alone simply cannot give rise to an Eighth Amendment claim for deliberate indifference to a serious medical need. The fact is that Aymar saw Bovarie, examined him, and rendered the care that her medical judgment recommended. The Constitution does not entitle Bovarie to anything more. *See Sanchez*, 891 F.2d at 242 ("A difference of opinion does not amount to a deliberate indifference to [an inmate's] serious medical needs."). Even medical care that is *objectively unreasonable* does not expose a physician to liability under the Eighth Amendment. *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006) (noting that "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under

our case law to satisfy the subjective component of a deliberate indifference claim"). Objection 7 is **OVERRULED**.

### 5. Objection 8

Bovarie claims that when he saw Aymar on September 19 he told her he thought he had kidney damage and she said "You can't prove it." (Dkt. No. 102-1, Ex. C, Pl. Aff. 6.) Judge Stormes' R&R explains that "[t]his testimony, even if admissible, does not establish that Dr. Aymar drew an inference of substantial harm or disregarded it." (R&R at 17.) Bovarie objects to this. He argues that the statement "You can't prove it" shows that Aymar was aware of his pain and deliberately disregarded it. The Court disagrees. Again, Bovarie misunderstands the legal standard for succeeding on a deliberate indifference claim. The mere fact that Aymar told Bovarie he could not prove he had kidney damage does not mean that Aymar knew of facts that gave rise to the inference that Bovarie had kidney damage, actually drew that inference, and nonetheless disregarded the risk it posed to Bovarie's health. *See Farmer*, 511 U.S. at 837. The objection is **OVERRULED**.

### 6. Objection 9

In addition to accusing Aymar of telling him he couldn't prove his kidney damage, Bovarie claims that Aymar told him on September 19 that his kidney pain and exhaustion was probably depression. (Dkt. No. 102-1, Ex. C, Pl. Aff. 6.) Bovarie objects to the R&R's conclusion that "[t]his statement . . . does not tend to show that she drew an inference of substantial risk of harm. In fact, it tends to show that she did not draw such an inference." (R&R at 17.) Bovarie claims that in light of what he told Aymar about his kidney pain, she was on notice of his serious medical issue and did nothing about it. At least, he argues, "she could have prescribed something or made a referral which the record shows she did not." (Obj. at 9.) Here, yet again, Bovarie mistakes his *disagreement* over the course of his treatment for *deliberate indifference* on the part of Aymar. Bovarie may believe that he didn't receive appropriate medical care, but that falls far short of establishing that Aymar was deliberately indifferent to a serious medical need of his. Objection 9 is **OVERRULED**.

### 7. Objection 10

Bovarie's final objection to the R&R's treatment of his deliberate indifference claim against Aymar takes issue with its response to Bovarie's claim that Aymar did not order any tests, medicine, or follow up for his severe kidney pain. The R&R reasons:

> Dr. Aymar, however, conducted a physical exam and detected no problems. She also reviewed the lab results from August 2007 and did not see any issues which would raise any concerns. (Aymar Decl. ¶ 4.) The medical record from the September 19, 2007 visit also indicates that Plaintiff's fatigue had resolved. Moreover, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)

(R&R at 18.) The Court adopts this reasoning. Bovarie continues to misunderstand the nature of a deliberate indifference claim, taking his own disagreement with the manner of his treatment to be an indication that Aymar knew a substantial risk of harm existed and disregarded that risk. Bovarie may believe Aymar's examination of him on September 19 was cursory, but that does not satisfy the subjective component of a deliberate indifference claim that Aymar acted with a culpable state of mind. The objection is **OVERRULED**.

**8.     Conclusion**

Rather than focus on the bigger picture and the caselaw establishing the parameters of an Eighth Amendment claim for deliberate indifference to a prisoner's medical needs, Bovarie has adopted a piecemeal approach to the R&R's treatment of his claim against Aymar and objected to particular characterizations and interpretations of the record. As a result, he simply misses the bigger picture. A deliberate indifference claim requires that a prison official *know of* and *disregard* a serious risk of harm to an inmate's health. At best, Bovarie has alleged that Aymar did not take his own complaints seriously enough, or however he would have preferred they be taken, but that is woefully inadequate. The Court therefore finds that there is no issue of material fact to be tried with respect to Bovarie's deliberate indifference claim against Aymar, and it **GRANTS** her motion for summary judgment on that claim.

**B.     Manaig**

1   In his complaint, Bovarie alleges that Manaig, a nurse, was deliberately indifferent to his serious medical needs during medical screenings on June 25, 2007 and December 17, 2007.[3] (FAC ¶¶ 150–51.)

The June 25, 2007 screening was in response to two "Health Care Service Request Forms" filed on June 21, 2007. In the first, Bovarie indicated he became sick "[d]ue to filthy food carts" on June 14 and was suffering from a headache, upset stomach, fatigue, and kidney pain. (Dkt. No. 91-4, AGO 155.) In the second, he indicated he became "very sick from food" on June 14 and was experiencing fatigue, headache, upset stomach, and kidney pain. (Dkt. No. 91-4, AGO 156.) Faced with these complaints, Manaig did not believe Bovarie was suffering from a serious medical condition and referred him for a M.D. evaluation. (Dkt. No. 91-4, AGO 157.) Manaig also referred Bovarie for a mental exam, given his history of complaining about food poisoning.[4] (*See* Dkt. No. 91-9, Manaig Decl., ¶ 5; Dkt. No. 91-4, AGO 646.)

The December 17, 2007 screening was in response to a Health Care Service Request that Bovarie filed just three days earlier in which he complained of stabbing pains in his kidney and six months of exhaustion, confusion, and kidney pain. (Dkt. No. 91-3, AGO 143.) At that time, Manaig recommended that Bovarie take Ibuprofen and referred him to the physician clinic. (Dkt. No. 91-3, AGO 142.)

### 1. Objection 1

Bovarie first objects to the R&R's conclusion that "the medical records contain support for Manaig's belief that Plaintiff could benefit from a mental health screening." (R&R at 18.) This objection is **OVERRULED**. The record is clear that prior to the June 25, 2007 screening

---

[3] In his objections to the R&R, Bovarie also mentions visits with Manaig on November 27, 2007 and December 17, 2007, but those are not the bases of any grievances against Manaig in his complaint. (*Compare* Compl. ¶¶ 149–51 with Obj. at 10.)

[4] It is true that Bovarie had complained about food poisoning in the past. On August 10, 2006, he completed a Health Services Request Form reporting diarrhea, cramps, and gas from food. (Dkt. No. 91-4, AGO 170.) Prior to that, he completed a Health Services Request Form on March 7, 2006 in which he complained of food poisoning contracted on January 16, 2006, and he reiterated this grievance on April 19, 2006 and May 26, 2006. (Dkt. No. 91-4, AGO 179, 174, and 171.)

Bovarie had complained repeatedly of food poisoning. Three of those complaints — on March 7, April 9, and May 26 of 2006 mentioned food poisoning that Bovarie allegedly contracted in mid-*January*. *See supra* n.4*.*

### 2. Objection 2

Bovarie objects to the R&R's finding that on June 25, 2007 Manaig "found no indications of flank pain." (R&R at 18.) In fact, on the "Encounter Form" with notes of the visit, Manaig indicated that Bovarie's chief complaint was kidney pain, that he'd been experiencing the pain for about two weeks, and that the pain was a 7 on a 10-point scale. (Dkt. No. 91-4.) There is no inconsistency here, however. Manaig simply reported that Bovarie complained of kidney pain but that she did not see indications of any flank pain:

> On June 25, 2007, I evaluated Plaintiff. He complained of two weeks of kidney pain and food poisoning. His vital signs were taken and were within normal limits. Plaintiff had no flank pain, low back pain, urinary frequency, dysuria, burning on urination, hematura, muscle spasms, numbness, or tingling. The encounter form lists additional findings of the examination. I performed a urine dipstick analysis, with the resuts being negative for signs of infection.

(Dkt. No. 91-9, Manaig Decl., ¶ 5.) As the R&R concludes, there is no evidence that Manaig drew an inference that Bovarie was suffering from a serious medical condition and disregarded it. The objection is **OVERRULED**.

### 3. Objection 3

Bovarie, finally, takes issue with the R&R's statement that when he finally saw Dr. Khatri, "he did not mention any issue relating to his kidney or abdominal pain. Thus, the delay, if any, was rendered meaningless by Plaintiff's failure to even raise the issue when he did see a doctor." (R&R at 19.) The Court **OVERRULES** this objection for the simple reason that it an almost peripheral point on which Judge Stormes' ultimate conclusion does not significantly turn.

### 4. Conclusion

Bovarie includes one more paragraph of objections to the R&R's treatment of his deliberate indifference claim against Manaig, but in that paragraph he doesn't single out anything specific in the R&R that he finds objectionable. Rather, he generally reiterates his

overall grievance against Manaig, namely that in his visits with him he never took his complaints of kidney pain seriously enough and recommended appropriate medical care. Instead, according to Bovarie, Manaig just scheduled "routine doctor appointments that take weeks . . ." (Obj. at 11.) As with his deliberate indifference claim against Aymar, Bovarie completely misses (and doesn't even try to argue from) the actual legal standard for the claim he wishes to bring. The record clearly shows that Manaig met with Bovarie after he filed a Health Care Service Report Form and that Manaig diagnosed and treated him conscientiously. The Court says this having read Manaig's declaration, the relevant portion of the R&R, and Manaig's reply brief. There is only one conclusion to draw here: there is no evidence on which a reasonable jury could find that Manaig was deliberately indifferent to a serious medical need of Bovarie's. Manaig's motion for summary judgment on Bovarie's deliberate indifference claim is therefore **GRANTED**.[5]

### III.   Bovarie's Claim Under California Government Code § 845.6

Under California law, a public employee who has custody of a prisoner may be liable "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6. The R&R seizes on the word "summon" and concludes that because Bovarie was *treated* by Aymar, and *referred* by Manaig to medical and mental health screening, they cannot be liable for failing to *summon* medical care under § 845.6. The R&R is right. The thrust of Bovarie's complaint is that he was misdiagnosed and mistreated by Manaig and Aymar, but that hardly triggers liability under § 845.6. *See Watson v. State of California*, 21 Cal.App.4th 836, 843 (Cal. Ct. App. 1993) ("There is no merit to the argument that the misdiagnosis triggered section 845.6 liability based on the alleged failure to summon reasonable medical care.").

### A.   Aymar

---

[5] The Court won't consider in detail the R&R's conclusion that Manaig is entitled to qualified immunity. It is very persuaded, however, by Judge Stormes' analysis, and under the standard set forth in *Saucier v. Katz* the Court would be inclined to find that Manaig is entitled to qualified immunity. 533 U.S. 194, 201 (2001).

Bovarie argues that Aymar provided zero treatment to him on September 19, 2007, other than conducting "an extremely cursory exam" and should have referred him to someone else. (Obj. at 12.) The fact is, though, that Aymar *saw* Bovarie on two occasions, first on September 19, 2007 when she conducted a physical exam, reviewed his lab results, and prescribed him Claritin, and second on October 25, 2007 when she ordered an x-ray and urinalysis and prescribed him aspirin and propranol. (Dkt. No. 92-2, Aymar Decl. ¶¶ 7–9.) Bovarie offers no facts to suggest that Aymar failed to *summon* medical care, and no reasonable jury could find that she so failed. Bovarie's objection is **OVERRULED** and Aymar's motion for summary judgment on Bovarie's § 845.6 claim is **GRANTED**.

### B. Manaig

With respect to Manaig, Bovarie argues that Manaig did nothing for his pain, which is not a grievance under § 845.6, and that he only scheduled routine follow-ups, which suggests that Manaig *did* summon medical care. (Obj. at 12.) In any event, the record is clear that Manaig referred Bovarie for other medical care on both June 25 and December 17, 2007. Bovarie may not have been happy with these referrals, and he may believe still that Manaig's treatment did him little good, but that is a dispute over the quality of his care. It is not a dispute over whether Manaig failed to care for Bovarie in the first instance by summoning medical care. There is no triable issue of material fact here. Bovarie's objection is therefore **OVERRULED**, and Manaig's motion for summary judgment on Bovarie's § 845.6 claim is **GRANTED**.

### IV. Bovarie's Malpractice Claim

"The standard of care in a medical malpractice case requires that physicians exercise in diagnosis and treatment that reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession under similar circumstances." *Munro v. Regents of University of California*, 215 Cal.App.3d 977, 983–84 (Cal. Ct. App. 1989).

### A. Aymar

The R&R gives substantial consideration to the record and concludes as follows:

> No reasonable jury could find as a matter of common knowledge that Dr. Aymar's reliance on her physical examination along with the results of her blood and urine tests was obviously outside the relevant standard of medical care.
>
> In sum, Defendant Aymar presents medical expert opinion that her care was within the standard of care and Plaintiff presents an argument that Dr. Aymar failure to act "obviously" fell below the standard of care.  Plaintiff's own opinion and skewed characterization of events does not suffice to create a genuine issue of material fact.  Dr. Aymar did not fail to act, she conducted an examination, and reviewed blood and urine tests, all of which indicated no physical problems.

(R&R at 23.)  Bovarie doesn't offer any direct objection to this.  Instead, he simply alleges malpractice "[f]or the same reasons listed in this filing for deliberate indifference and the violation of Cal. Gov. Code 845.6" and claims, in a conclusory manner, that "Manaig and Aymar failed to exercise in diagnosis and treatment that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances." (Obj. at 12–13.)  This is as good as no objection at all.  The Court has fully considered the record, the R&R, and Aymar's reply brief to Bovarie's objections and adopts the R&R's conclusion.  Bovarie's objection, to the extent there is one, is therefore **OVERRULED**.  The Court **GRANTS** summary judgment to Aymar on Bovarie's malpractice claim.

### B. Manaig

The Court also **GRANTS** summary judgment to Manaig.  Bovarie offers no coherent objection to the R&R's detailed consideration of his malpractice claim against Manaig, and the Court doesn't believe there is an objection to be made.  On the record before it, the Court finds that no reasonable jury could find that Manaig, as the first responder to Bovarie's health grievances, exercised a degree of skill and care beneath that which other reasonable nurses would have exercised in similar circumstances.  To the extent Bovarie objects to the R&R, his objection is **OVERRULED**.

### C. Appointment of a Medical Expert

In his objections to the R&R, Bovarie renews his request for a medical expert but offers no rebuttal to the R&R's conclusion that the request should be denied.  First, as the

R&R correctly observes, the request for a medical expert is untimely. Bovarie first requested the appointment of a medical expert on June 18, 2010, before Defendants filed their motions for summary judgment. (Dkt. No. 67.) This request was denied *without prejudice* just over one month later, on July 27, 2010. (Dkt. No. 70.) Then, on November 2, 2010, the Court issued a scheduling order requiring that all pretrial motions be filed on or before March 14, 2011 and all witnesses be identified by May 23, 2011. (Dkt. No. 78 at 2.) Defendants filed their summary judgment motions on the March 14 deadline for pretrial motions (Dkt. Nos. 91, 92), but Bovarie did not renew his request for a medical expert until he filed a *sur-reply* to Defendants' summary judgment motions on July 8, 2011. The R&R is right: Bovarie's request was untimely. If he wanted to build expert testimony into his opposition to summary judgment, he should have renewed his request for an expert by March 14, 2011, the deadline for pretrial motions. In any event, the Court adopts the R&R's conclusion that the appointment of an expert under Federal Rule of Evidence 706 is not warranted. Bovarie's renewed request for a medical expert is therefore **DENIED**.

**VI.  Conclusion**

The Court **ADOPTS** the R&R in its entirety, **OVERRULES** all of Bovarie's objections to it, and **GRANTS** Defendants' motions for summary judgment. Bovarie is more sophisticated than the typical prisoner-litigant, and he has vigorously litigated this case for almost three and a half years. This is the end of the road. The Clerk is ordered to close this case.

**IT IS SO ORDERED**.

DATED: March 6, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge